FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 25 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
23 JEFFERSON STREET LLC,

        Appellant,

- against -

636 ASSETS, INC.,

        Appellee.
-----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORDANDUM & ORDER**
14-CV-7150 (CBA)

-----------------------------------------------------------x
669 EAST 21 LLC,

        Appellant,

- against -

636 ASSETS, INC.,

        Appellee.
-----------------------------------------------------------x

**MEMORDANDUM & ORDER**
14-CV-7171 (CBA)

AMON, Chief United States District Judge.

These consolidated appeals challenge the bankruptcy sales of two pieces of real property to appellee 636 Assets, Inc. ("636 Assets"). Bankruptcy Judge Elizabeth S. Stong of the Bankruptcy Court for the Eastern District of New York approved those sales in orders dated November 20, 2014 and December 1, 2014 (collectively, the "Sale Orders"). Appellants 23 Jefferson LLC and 669 East 21 LLC timely appealed those Sale Orders on December 2, 2014. (No. 14-CV-7150, DE #1; No. 14-CV-7171, DE #1.)

## BACKGROUND

23 Jefferson LLC and 669 East 21 LLC owned parcels of real property in Brooklyn, New York bearing those addresses (the "Jefferson Street Property" and the "East 21st Street

1

Property," respectively). The Jefferson Street Property is in Bushwick; the East 21st Street Property is in Ditmas Park. Both 636 Assets and a third-party, Green Tree Servicing, LLC, held mortgages on those properties. Although the properties were intended primarily for residential use, neither had a Certificate of Occupancy or was generating any rental income at the time of the bankruptcies.

## I. Proceedings in the Bankruptcy Court

On April 30, 2013, 669 East 21 filed a voluntary Chapter 11 petition. Shortly thereafter, 636 Assets filed an involuntary petition related to the Jefferson Street Property. Because the primary asset of each appellant was the property, each bankruptcy constituted a single-asset real estate case within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(51B).

### A. Sales of the Properties at Auction

Both appellants and 636 Assets submitted proposed plans of reorganization. In its plan, 636 Assets proposed to sell the properties at auction and distribute the proceeds to creditors. By orders dated September 10, 2014, the bankruptcy court approved the disclosure statements and set a voting schedule for the competing plans. (Morrison Exs. 4-5, No. 14-CV-7150, DE #22-5 to 22-6.) In addition, the bankruptcy court approved the sale date selected by the parties, October 20, 2014, and directed 636 Assets to advertise those sales in the Jewish Press and the Daily News prior to the confirmation hearing. (Id.) Pursuant to those orders, 636 Assets publicized the sales in the September 24, 2014 edition of the Daily News[1] and for one week in the Jewish News commencing September 26, 2014. Appellants did not object to those notices prior to the auction.

---

[1] At the confirmation hearing before the bankruptcy court, appellants for the first time raised an objection to the edition of the Daily News in which notice was published. (See Nov. 18, 2014 Bankr. Hrg. Tr. at 15:16-17:5.) The bankruptcy court overruled that objection and found that the publication sufficiently conformed to its prior orders. (Id. at 20:19-21:12.) Appellants do not challenge that finding before this Court.

As scheduled, an auction of the properties was held on October 20, 2014. At the auction, 636 Assets made credit bids of $900,000 for the Jefferson Street Property and $1,320,000 for the East 21st Street Property. Although other parties attended the auction, no other bids were made nor did any of those parties bring sufficient certified funds to enter a bid. (See Nov. 18, 2014 Bankr. Hrg. Tr. at 13:16-21, 14:14-15.) Accordingly, 636 Assets was declared the highest bidder for each property. (Morrison Exs. 1-2, No. 14-CV-7150, DE #22-2 to 22-3.) Again, appellants raised no contemporaneous objections to the conduct of 636 Assets at the auction or the bidding procedures employed therein.

On October 21, 2014, a hearing was held to confirm 636 Assets' plan of reorganization. After reviewing the record, the bankruptcy court confirmed that plan after finding that it had received a majority of the votes cast and complied with the requirements imposed by the Bankruptcy Code—including the relevant disclosure and solicitation provisions. (No. 14-CV-7150, DE #26-3 at 16-24.)

## B. Confirmation of the Sales to 636 Assets

On November 7, 2014, 636 Assets moved to confirm the sales of the properties. Appellants objected on November 17, 2014 and requested that the bankruptcy court grant a new auction. First, appellants speculated that the proximity of the sales to a period of Jewish holidays—when Orthodox Jews do not work[2]—"effectively precluded [observant Jews] . . . from being involved in the process." (No. 14-CV-7150, DE #26-3 at 49 ¶¶ 10-12.) Second, appellants

---

[2] Appellants incorrectly claim that the auction was held "the day after the conclusion of the eight day, Jewish Holiday of Sukkot, when many Jews do not conduct business." (Appellants' Br. at 6-7.) The auction was held on October 20, 2014. In 2014, Sukkot began on October 9, 2014 and ended October 15, 2014. See Jewish Holidays & Festivals in 2014, Chabad, http://www.chabad.org/holidays/default_cdo/year/2014/jewish/2014-holidays.htm (last visited July 14, 2015). Although observant Jews are not permitted to work on the first two days of Sukkot, certain work may be done during the remainder of the holiday. See id. The two days immediately following Sukkot are separate Jewish Holidays—Shmini Atzeret and Simchat Torah. See id. During those two days, observant Jews do not work; that work injunction was lifted at sundown on the evening of October 18, 2014 at the conclusion of the Sabbath. See id.

3

alleged that 636 Assets had colluded with an unidentified real estate broker. (Id. ¶¶ 14-15.) They offered no evidence in support of that allegation but summarily claimed that representatives from 636 Assets were observed talking with that real estate broker during the auction. (Id.) Finally, appellants claimed that 636 Assets failed to file an affidavit establishing that it had properly advertised the auction. (Id. ¶ 16.)

In reply, 636 Assets submitted a sworn affirmation categorically denying any collusion, and stating that the auction was advertised and conducted in accordance with both its proposed plan of reorganization and the bankruptcy court's directives. (Id. at 51 ¶¶ 3, 5, 8.) It also noted that the bankruptcy court had "specifically considered" the proximity of the auction to the Jewish holidays when setting the auction date. (Id. ¶ 4.)

On November 18, 2014, the bankruptcy court held a hearing on the motions to confirm the sales. Based on its review of the record, the bankruptcy court concluded that the auction complied with the requirements set out in its prior orders and the plan of reorganization and satisfied the relevant provisions of the Bankruptcy Code. (Nov. 18, 2014 Bankr. Hrg. Tr. at 20:8-21:12.) Despite appellants' disappointment with the results of the auction, the bankruptcy court found that none of their objections provided sufficient basis to deny confirmation of the sales. (Id. at 21:13-22:24.) Specifically, the bankruptcy court noted that appellants had consented to the timing of the auction despite knowing that it fell shortly after a number of Jewish holidays and found that appellants' charge of collusion lacked any support in the record. (Id. at 21:20-22:19.) Accordingly, the bankruptcy court approved the sales in a pair of Sale Orders dated November 20, 2014 and December 1, 2014 that authorized 636 Assets to close on the properties immediately. (Morrison Exs. 1-2, No. 14-CV-7150, DE #22-2 to 22-3.)

On December 2, 2014, appellants timely appealed the Sale Orders to this Court.

4

## II. Appellants Failed to Obtain a Stay of the Sale Orders and Both Sales Have Closed

On November 28, 2014, 636 Assets closed on the East 21st Street Property. (Morrison App'x B, No. 14-CV-7150, DE #25-3.) It then assigned title to a new holding company titled 669 LLC that same day. (Morrison App'x C, No. 14-CV-7150, DE #25-4.)

Subsequent to those transfers, on January 5, 2015, appellants requested—for the first time—to stay the effect of the Sale Orders. (See DE #20 at 8.) After a hearing, the bankruptcy court denied appellants' motion on January 22, 2015, concluding that the factors enumerated in Hirschfeld v. Board of Elections, 984 F.2d 35, 39 (2d Cir. 1992) did not support a stay here. (See Jan. 22, 2015 Bankr. Hrg. Tr. at 28:16-44:9.)

Following the bankruptcy court's denial of a stay, 636 Assets closed on the Jefferson Street Property and took title on February 2, 2015. (Morrison App'x D, No. 14-CV-7150, DE #25-5.) Title was then transferred to a new holding company titled 23 Partners LLC. (Morrison App'x E, No. 14-CV-7150, DE #25-6.)

On March 9, 2015, appellants first requested that this Court stay the effect of the Sale Orders. (No. 14-CV-7150, DE #17; No. 14-CV-7171, DE #9.) Because the sales authorized by those Orders had already closed by that time, the Court denied appellants' stay motion as moot. (Minute Entry & Order dated 4/1/2015.)

## DISCUSSION

On appeal, appellants argue that the Court should vacate the Sale Orders, rescind the sales, and remand for the bankruptcy court to re-auction the properties. For the reasons that follow, the Court finds their appeals to be statutorily moot.

## III. Standard of Review

Section 158(a) of Title 28 vests this Court with appellate jurisdiction to review final orders of bankruptcy courts. 28 U.S.C. § 158(a). An order approving the sale of assets under section 363 of the Bankruptcy Code is reviewed for abuse of discretion. See In re Motors Liquidation Co., 428 B.R. 43, 51 (S.D.N.Y. 2010) (citing In re Chrysler LLC, 576 F.3d 108, 119 (2d Cir. 2009)). "A bankruptcy court abuses its discretion when it arrives at '(i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.'" Id. at 51-52 (quoting Schwartz v. Aquatic Dev. Grp., Inc., 352 F.3d 671, 678 (2d Cir. 2003)).

## IV. Statutory Mootness

Section 363(m) of the Bankruptcy Code sharply curtails appellate review of an unstayed bankruptcy court order approving a sale of property.[3] See Motors Liquidation, 428 B.R. at 53 (finding that this limitation applies with equal force where the district court denied a timely stay motion). That provision strips reviewing courts of appellate jurisdiction "except on the limited issue of whether the sale was made to a good faith purchaser." In re WestPoint Stevens, 600 F.3d 231, 247 (2d Cir. 2010). In doing so, it maximizes the recovery for the estate by ensuring that purchasers will not "demand a large discount . . . [to compensate for] the risk of endless litigation as to who has rights to estate property." In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997).

Although the Bankruptcy Code offers no definition of "good faith," courts in this Circuit apply the traditional equitable definition: "one who purchases the assets for value, in good faith

---

[3] Section 363(m) of the Bankruptcy Code provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

and without notice of adverse claims." Id. at 390. Payment of less than the full appraised value of the property does not undermine a finding of good faith. Id. (finding purchase was "for value" when buyer paid 75% of appraised value). Nor does the purchaser's participation in the bankruptcy or its knowledge of a pending appeal imply bad faith. 11 U.S.C. § 363(m); see In re Ewell, 958 F.2d 276, 280 (9th Cir. 1992) ("We have applied the mootness rule whether or not the purchaser is a party to the appeal or the purchaser has taken irreversible steps following the sale.") (citation omitted). Rather, "[a] purchaser's good faith is lost only by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[4] In re Gucci, 126 F.3d at 390 (internal quotation marks omitted).

Where the bankruptcy court determines that the buyer purchased in good faith, the appeal is moot unless appellants can establish that such a finding is clearly erroneous. See Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp., 610 F.3d 44, 51-52 (2d Cir. 2010) (citation omitted). In the Sale Orders at issue here, the bankruptcy court explicitly found that 636 Assets purchased each property in good faith. (Morrison Exs. 1-2, No. 14-CV-7150, DE #22-2 to 22-3.) Appellants failed to obtain a stay of the Sale Orders either in the bankruptcy court or from this Court, and title to both properties subsequently transferred to 636 Assets. (Morrison Exs. 6, 8, No. 14-CV-7150, DE #22-7, 22-9.) As such, appellants now face the daunting task of showing that the bankruptcy court's findings of good faith were clearly erroneous.[5] See United Techs., 610 F.3d at 51-52.

---

[4] Relying on In re DBSD North America, Inc., 634 F.3d 79, 102 (2d Cir. 2011), appellants argue that "[i]n the context of § 363(m) the Second Circuit has described bad faith as a party acting with 'an interest other than an interest as a creditor.'" (Reply Br. at 1.) That claim is puzzling as In re DBSD dealt not with § 363(m), but rather with the distinct question of when the bankruptcy court can disregard a creditor's vote to accept or reject a plan based on bad faith. 634 F.3d at 102. In re Gucci makes plain that § 363(m) employs a distinct standard of good faith. 126 F.3d at 390. Indeed, it must because bidders act not purely as creditors, but rather seek to further their own interest as a potential purchaser of the properties.

[5] Appellants incorrectly claim that 636 Assets "carries the burden to show good faith." (Reply Br. at 1.) Although that may be true in the first instance, it ignores the fact that here the bankruptcy court has already found good faith.

First, appellants argue that 636 Assets acted in bad faith by purchasing the properties for "well below the[ir] market value." (Reply Br. at 5.) To establish those market values, appellants rely on appraisals valuing the Jefferson Street Property at $1.45 million and the East 21st Street Property at $2.5 million. (Carlebach Exs. A-B, No. 14-CV-7150, DE #19-1 to 19-2.) But, as appellants conceded at oral argument, neither appraisal was presented to the bankruptcy court. (Oral Arg. Tr. at 5:6-9.) Therefore, this Court may not consider them. See In re Emmons-Sheepshead Bay Dev. LLC, 518 B.R. 212, 219 (E.D.N.Y. 2014) ("The role of the district court is not to hear testimony or consider documentary evidence; it is to review a factual record as found by a bankruptcy court and to determine whether the bankruptcy court made an error under applicable standards of appellate review."). Without those appraisals, appellants are left solely with the unsupported claim that, as a secured creditor, 636 Assets "must have known" that it got a below-market price for the properties. (Reply Br. at 2.) Even assuming that to be true (which is far from clear), a purchase for less than full market value does not preclude a finding of good faith and certainly does not render the bankruptcy court's findings clearly erroneous.[6] See In re Gucci, 126 F.3d at 390 (finding that property was purchased in good faith where buyer paid 75% of the appraised value).

Second, at oral argument, appellants claimed for the first time that a "mortgagee credit bidding its mortgage [does not] create a mootness issue" because it "does not involve the exchange of new value." (Oral Arg. Tr. at 1:25-2:2.) Not only did appellants forfeit that argument by failing to raise it in their briefs, Goldberg v. UBS AG, 690 F. Supp. 2d 92, 98-99

---

On appeal, appellants (not appellees) bear the heavy burden of establishing that such a finding was clearly erroneous. See United Techs., 610 F.3d at 51-52.

[6] Moreover, appellants admit that 636 Assets was "owed only $490,480.00" but bid $900,000.00 on the Jefferson Street Property and $1.32 million on the East 21st Street Property. (Reply Br. at 2.) As 636 Assets paid an amount substantially in excess of its mortgages, appellants' claims of collusion or unconscionable behavior ring particularly hollow.

(E.D.N.Y. 2010), but also they concede that no legal authority supports that tenuous reading of § 363(m). (Oral Arg. Tr. at 2:9-17.) Instead, appellants argue that as an equitable matter the Court should read such an exception into the statute. (Id. at 3:1-10.) The law is clear that courts lack the power to rewrite statutes regardless of how sensible the proposed revision may be. See E.P.A. v. EME Homer City Generation, L.P., --- U.S. ---, ---, 134 S. Ct. 1584, 1601 (2014); Patterson v. Shumate, 504 U.S. 753, 759 (1992). Accordingly, the Court rejects appellants' invitation to carve out a new exception to the broad protection offered by § 363(m).

Finally, appellants contend that by transferring each of the properties to a new holding company 636 Assets "tacitly admitted that the original sales of the properties did not moot this appeal." (Reply Br. at 3.) That claim ignores the fact that appellants themselves held each of the properties in single-asset holding companies. Because appellants have shown no reason why such a structure is necessarily indicative of bad faith, that tenuous claim falls short.

In sum, appellants have failed to meet their burden of showing that the bankruptcy court's findings of good faith were clearly erroneous. To the contrary, the record makes plain that these purchases fall squarely within the protection of § 363(m), as 636 Assets purchased each property for a substantial sum after fairly participating in the auction as directed by the bankruptcy court. The Court therefore dismisses the appeals for want of appellate jurisdiction. See In re WestPoint Stevens, 600 F.3d at 247.

V. **Merits**

Even if the appeals were not moot, the Court would still affirm the decisions of the bankruptcy court because appellants failed to identify any legal or factual error underlying the Sale Orders. Indeed, the record makes plain (and appellants do not dispute) that the auction was advertised and held in accordance with the bankruptcy court's orders. Although appellants

concede that they "improvidently agreed to" that auction date, they contend that due to the lackluster turnout, "the [bankruptcy] judge could have used her discretion" to offer them a second chance. (Oral Arg. Tr. at 7:1-11.) But even if Bankruptcy Judge Stong could have taken that action, the fact that she declined to do so is hardly an abuse of discretion.

The parties—including appellants—extensively negotiated the protocols governing the auction and, as the bankruptcy court correctly found, the auction complied with those court-ordered directives. Appellants may regret those decisions, but litigants are not entitled to a second chance merely because they missed the mark the first time. Because the second auction that appellants request would further drag out these already protracted bankruptcies and invariably prejudice 636 Assets, the bankruptcy court properly denied their request.

## CONCLUSION

For the reasons stated above, the consolidated appeals are dismissed for lack of appellate jurisdiction. The Clerk of Court is respectfully directed to close the cases.

SO ORDERED.

Dated: August 24, 2015
      Brooklyn, New York

                                                                  s/Carol Bagley Amon
                                                                   Carol Bagley Amon
                                                                   Chief United States District Judge